UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIDA G.B.[1], <br><br> Petitioner, <br><br> v. <br><br> SERGIO ALBARRAN, et al., <br><br> Respondents. | No. 1:25-cv-02061-TLN-CKD <br><br> **ORDER** |

This matter is before the Court on Petitioner Lida G.B.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 4.) For the reasons set forth below, Petitioner's motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

### I. FACTUAL BACKGROUND[2]

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 4.) Petitioner is a citizen of Colombia and is also an asylum applicant in the United States. (*Id.* at 5.) On April 27, 2023, Petitioner was paroled into the United States as an "arriving alien" pursuant to Immigration and Nationality Act ("INA") § 212(d)(5), 8 U.S.C. § 1182(d)(5). (*Id.*) The U.S. Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), thereby initiating removal proceedings in immigration court. (*Id.*) During the pendency of those proceedings, Petitioner complied with all requirements of her conditions of release. (*Id.*) At no point did DHS allege Petitioner posed a danger to the community or risk of flight. (*Id.*)

On March 28, 2025, an immigration judge terminated Petitioner's removal proceedings based on DHS's failure to prosecute. (*Id.*) DHS did not appeal, move to reopen, or otherwise seek to revive those proceedings. (*Id.*) As a result, Petitioner was no longer in removal proceedings and remained in the country under parole. (*Id.*)

On October 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner at a routine check-in. (*Id.*) DHS did not issue a new NTA, did not initiate new removal proceedings, and did not identify any material change in circumstances. (*Id.*) DHS did not allege Petitioner had violated any condition, committed any crime, failed to appear, or otherwise engaged in conduct warranting arrest. (*Id.*)

After Petitioner was taken into custody, DHS subjected her to a credible fear interview and issued a negative credible fear determination, despite the fact she had already filed an affirmative asylum application and was not in expedited removal proceedings at the time of her arrest. (*Id.* at 6.) Petitioner timely sought review of that determination before an immigration judge. (*Id.*) On November 18, 2025, the immigration judge vacated the negative credible fear finding and concluded Petitioner established a credible fear of persecution, thereby confirming her eligibility to pursue asylum. (*Id.*)

///

---

[2]   The instant factual background is taken largely verbatim from Petitioner's brief in support of his motion for TRO. (ECF No. 4.)

1    Notwithstanding this favorable ruling, DHS continued to detain Petitioner at California City Correctional Center. (*Id.*) DHS has not issued a new NTA, has not initiated removal proceedings, and has not provided Petitioner with a bond hearing or any other individualized custody determination before a neutral decisionmaker. (*Id.*) DHS has never found, and does not contend, Petitioner poses a danger to the community or risk of flight. (*Id.*) Petitioner has no criminal history, has consistently complied with all immigration requirements, and has demonstrated her willingness to appear for all proceedings and comply with any conditions of release. (*Id.*) Petitioner now challenges the lawfulness of her civil detention and seeks release. (*See* ECF Nos. 1, 4.)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

///
///
///
///
///

3

**III.   ANALYSIS**[3]

      A.   <u>Likelihood of Success on the Merits</u>

Petitioner has established a likelihood of success on her claims that her detention violates the INA and the Fifth Amendment Due Process Clause. The Court discusses each claim in turn.

              *i.   Violation of the INA*

First, Petitioner has established a likelihood of success on her claim that her detention is unlawful under the INA. (ECF No. 4 at 7–9.) Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the Government has broad discretion whether to release or detain the individual. *Id.* Further, § 1226(a) provides several layers of review for an initial custody determination. *Id.* It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Conversely, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.

Petitioner states that although she was initially paroled as an "arriving alien," she was not detained under § 1225(b)(2) at the time of entry. (ECF No. 4 at 8.) Petitioner asserts she was instead paroled into the United States, allowed to live in the community while pursuing asylum, and remained in the interior under parole for an extended period while complying with all requirements. (*Id.*) Petitioner further asserts that when ICE later arrested her at a routine check-in, DHS did not issue a new NTA, did not initiate new removal proceedings, and did not identify any statutory basis for mandatory detention. (*Id.*) Petitioner maintains she is detained under §

---

[3] The Court finds Petitioner has sufficiently met the requirements for issuing a TRO without notice. *See* Fed. R. Civ. P. 65(b). Petitioner notified Respondents via email that he would be filing the motion and served copies of the documents. (*See* ECF No. 4 at 6–7.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

4

1226(a), which provides for discretionary detention and requires an individualized custody determination. (*Id.* at 9.) The Court agrees. As this Court, and many others, have repeatedly found: § 1225(b) applies only to noncitizens "seeking admission" — a category that does not include noncitizens like Petitioner who were detained within the United States. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position). This Court has made its position clear. Absent a higher court order holding otherwise, this Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b). Petitioner is instead subject to § 1226(a) and is therefore entitled to the process that statute requires, including a bond hearing at a minimum. Yet, Respondents have not provided any hearing to Petitioner either pre- or post-detention. Accordingly, Petitioner is likely to succeed on the merits of her claim that Respondents have violated the INA and improperly subjected her to mandatory detention without a hearing.

### ii. Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### a) Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

1  Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by
2  statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he
3  government's decision to release an individual from custody creates 'an implicit promise,' upon
4  which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to
5  the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,
6  2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a
7  noncitizen released from custody pending removal proceedings has a protected liberty interest in
8  remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL
9  2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional
10  release rises to the level of a protected liberty interest, courts have "compar[ed] the specific
11  conditional release in the case before them with the liberty interest in parole as characterized by
12  *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.
13  Cal. Sept 9, 2025).

14  Here, the Court agrees with Petitioner that she gained a liberty interest in her continued
15  freedom after she was paroled into the United States, allowed to live in the community, and
16  permitted to pursue asylum. (ECF No. 4 at 10.) Under *Morrisey*, this release implied a promise
17  that she would not be re-detained during the pendency of her immigration proceedings if she
18  abided by the terms of her release. For more than two years after her parole entry and six months
19  after termination of her removal proceedings, ICE arrested Petitioner at a routine check-in, even
20  though DHS did not issue a new NTA, did not initiate new removal proceedings, and did not
21  identify any material change in circumstances. (ECF No. 4 at 5.) Petitioner asserts she has no
22  criminal history, has consistently complied with all immigration requirements, and has
23  demonstrated her willingness to appear for all proceedings and comply with any conditions of
24  release. (*Id.* at 6.) As this Court has found previously, along with many other courts in this
25  district when confronted with similar circumstances, Petitioner has a clear interest in her
26  continued freedom as she awaits the outcome of her asylum proceedings. *See, e.g.*, *Doe v.
27  Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in
28  allowing petitioner to remain in the community for over five years strengthened petitioner's

liberty interest).

*b)    Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established her due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody, living in the community for more than two years, and has no criminal history, record of noncompliance, or history of dangerousness. (ECF No. 4 at 11.) Additionally, the removal proceedings against Petitioner were terminated and DHS has not moved to reopen or institute a new case seeking Petitioner's removal. (*Id.* at 5.) Despite that, Petitioner has now been detained without any bond hearing or any individualized custody determination. (*Id.* at 11–12.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by her detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. As previously mentioned, Petitioner was not provided any bond hearing, individualized custody determination, or any neutral adjudication. (ECF No. 4 at 12.) Thus, the Court finds there is a serious likelihood Petitioner was likely erroneously deprived of her liberty interest. Without any procedural safeguards to determine whether her detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent

1 under a final order of removal, "[t]he government has no legitimate interest in detaining

2 individuals who have been determined not to be a danger to the community and whose

3 appearance at future immigration proceedings can be reasonably ensured by [ ] bond or

4 alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4

5 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a

6 noncitizen presents a risk of flight or danger to the community.") (cleaned up).

7     Here, Petitioner asserts the Government's interest in detaining her without a hearing is

8 minimal in light of her long record of compliance, the termination of her removal proceedings,

9 and the immigration judge's favorable credible-fear determination. (ECF No. 4 at 13.) The Court

10 agrees. An immigration judge has confirmed Petitioner's eligibility to pursue asylum and there is

11 no final order of removal. (*See id.*) Indeed, according to Petitioner, there are no removal

12 proceedings against Petitioner at all. (*Id.* at 2.) Additionally, before releasing her in 2023,

13 immigration authorities likely found Petitioner was not a danger to the community nor a flight

14 risk and, in the subsequent years, Petitioner complied with all laws and conditions of her release.

15 (*Id.* at 5–6.) As stated above, Petitioner's arrest is evidence of her compliance because it occurred

16 during a routine check-in. (*Id.*) Therefore, on these facts, the Court cannot find any legitimate

17 interest for Respondents to detain Petitioner.

18     Additionally, the cost and time of procedural safeguards are minimal here. Notice and

19 custody determination hearings are routine processes for Respondents. Indeed, these are the very

20 processes owed to Petitioner under § 1226(a), which Petitioner contends, and this Court has

21 found, applies to Petitioner. Any delay in detention (if justified) for the time to provide notice

22 and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden

23 for the Government to return Petitioner home to await a determination on her asylum application

24 than to continue to detain her. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3

25 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of

26 immigration detention are staggering.").

27     The Court finds that, under these circumstances, Respondents are required to provide

28 notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the

8

Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of her release, has been previously determined not to be a flight risk or a danger, has never been arrested, and removal is not reasonably foreseeable — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Petitioner asserts that Respondents have not provided any post-deprivation process. Accordingly, with respect to her procedural due process claim, Petitioner has shown she is likely to succeed on the merits.

### B. Irreparable Harm

Petitioner has also established she will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. The Court agrees with Petitioner that the irreparable nature of her harm is underscored by the fact that she previously lived in the community for an extended period, established relationships, and pursued asylum. (ECF No. 4 at 14.) Without relief, Petitioner faces the prospect of significant additional time in detention and an interference with her ability to pursue asylum and to communicate with counsel. (*Id.*) Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

///

C.  Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). Any burden imposed by requiring Respondents to release Petitioner from unlawful custody and refrain from re-detention unless and until they comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if she continues to be detained. In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's immediate release on the same terms as she was released prior to her detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.  CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 4) is GRANTED.
2. Respondents must IMMEDIATELY RELEASE Petitioner Lida G.B. from custody. Respondents shall not impose any additional restrictions on her, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice

and a pre-deprivation hearing before a neutral fact-finder where Respondents show:

(a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this Order. Respondents shall file responsive papers by **January 9, 2026**. Petitioner may file a reply, if any, by **January 14, 2026**. **The parties shall indicate in their briefing whether they waive a hearing**. Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5. Petitioner is ORDERED to immediately serve this Order and all documents filed in this case to date on Respondents, including a copy via email to: usacae.ecf2241-imm@usdoj.gov. **Petitioner shall file a proof of such service by 10:00 a.m. on January 5, 2026**.

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.

IT IS SO ORDERED.

Date: January 3, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11